IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FEDERATED INDEPENDENT TEXAS UNIONS AIRCRAFT LOCAL NO. 900, | § § § | |
| Plaintiff | § | |
| v. | § § | |
| LOCKHEED MARTIN CORPORATION d/b/a LOCKHEED MARTIN AERONAUTICS COMPANY, | § § § § § | CIVIL ACTION NO. 4:02-CV-0489-Y |
| Defendant | § § | |
| v. | § | |
| OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION LOCAL NO. 277, AFL-CIO, | § § § § | |
| Third Party Defendant | § § | |

### DEFENDANT'S FIRST AMENDED ANSWER, COUNTERCLAIM, AND THIRD PARTY COMPLAINT

LOCKHEED MARTIN CORPORATION ("Defendant") files its First Amended Answer, Counterclaim, and Third Party Complaint, stating:

### I.

### RESPONSES TO PLAINTIFF'S ALLEGATIONS

1.  In response to the allegations in paragraph 1 of the Complaint, Defendant admits Plaintiff is pursuing an action under §301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, but denies that Plaintiff has a viable cause of action or is entitled to any of the relief sought.

2.  Defendant admits the allegations in paragraph 2 of the Complaint.

3.  In response to the allegations in paragraph 3 of the Complaint, Defendant admits that it does business as Lockheed Martin Aeronautics Company, admits it is a Maryland

Corporation, admits it is engaged in the manufacture of aircraft at a plant located adjacent to the city limits of the City of Fort Worth, Texas, admits that it is licensed to do business in the State of Texas and is an employer in an industry affecting interstate commerce; otherwise, Defendant denies the allegations in paragraph 3.

4. Defendant admits the allegations in paragraphs 4, 5, and 6 of the Complaint.

5. In response to the allegations in paragraph 7 of the Complaint, Defendant admits that the collective bargaining agreement attached as Exhibit D to the Complaint appears to be a copy of the current collective bargaining agreement between the parties, but denies that such collective bargaining agreement existed "at all relevant times," as alleged. The collective bargaining agreement attached as Exhibit D to the Complaint was, by its terms, "made and entered into" on June 4, 2001, whereas the grievance made the basis of the Plaintiff's Complaint appears to have been dated February 12, 2001.

6. In response to the allegations in paragraph 8 of the Complaint, Defendant admits that the grievance procedure described in the collective bargaining agreement attached as Exhibit D to the Complaint is found at pages 38 through 41 of Exhibit D. However, Defendant denies that the attached collective bargaining agreement uses the term "labor disputes" within the definition of the term "grievance" (which appears on page 39 of Exhibit D).

7. In response to the allegations in paragraph 9 of the Complaint, Defendant admits that the arbitration procedures set forth in the collective bargaining agreement attached as Exhibit D are found at pages 40 and 41 of Exhibit D. However, Defendant denies that all of the parties' arbitration procedures are set forth in Section 12 of the attached collective bargaining agreement; some procedures have been established by past practice between the parties and are subsumed within the meaning of the provisions of the collective bargaining agreement.

Moreover, Defendant denies that the collective bargaining agreement attached as Exhibit D was in existence at the time of the grievance made the basis of Plaintiff's Complaint.

8. In response to the allegations in paragraph 10 of the Complaint, Defendant avers that the collective bargaining agreement attached as Exhibit D to the Complaint neither prohibits nor requires a tripartite arbitration involving any organization or person who is not a signatory party to the collective bargaining agreement attached as Exhibit D to the Complaint; therefore, Defendant denies the allegations in paragraph 10, as worded

9. In response to the allegations in paragraph 11 of the Complaint, Defendant admits that Exhibit A appears to be a true and correct copy of Grievance Number 3722 in Case No. 93-88, but denies that the grievance complained about the "assignment of bargaining unit work." On its face, the grievance (Exhibit A) refers to "reassigned task" and specifically refers to the work of "electrical planners" in the areas of OPOS planning, installation planning, flight test planning, instrumentation hardware planning, QAR (repair and rework) planning, and mock-up planning.

10. In response to the allegations in paragraph 12 of the Complaint, Defendant admits that Plaintiff invoked arbitration in Case No. 93-88, admits that Plaintiff's grievance in Case No. 93-88 was settled pursuant to a settlement agreement without an arbitration hearing, admits that the language quoted from the settlement agreement (Exhibit B to the Complaint) is accurate, admits that Exhibit B to the Complaint is a copy of the grievance settlement agreement, but denies the remaining allegations in paragraph 12, as worded. Contrary to the implications in the allegations of paragraph 12, the settlement agreement (Exhibit B) was the bi-product and result of tripartite negotiations between representatives of Plaintiff, Defendant, and OPEIU Local 277.

11. In response to the allegations in paragraph 13 of the Complaint, Defendant states that it is unable to admit or deny the allegations in paragraph 13 because such allegations make reference to the signing of "a form" that apparently was not attached as an exhibit to the Complaint.

12. In response to the allegations in paragraph 14 of the Complaint, Defendant admits that Plaintiff filed Grievance No. 5697 on or about February 12, 2001, admits that the grievance was assigned Case No. 01-002, admits that Defendant denied the grievance at the first three steps of the grievance procedure, admits that Plaintiff requested that the grievance be submitted to step four (arbitration) within the grievance procedure, but denies the remaining allegations in paragraph 14 of the Complaint and denies that the grievance attached as Exhibit C to the Complaint is a complete copy of the grievance (because an attachment to the grievance apparently is missing).

13. In response to the allegations in paragraph 15 of the Complaint, Defendant admits that Plaintiff has requested that Grievance No. 5697 be submitted to arbitration, but denies the remaining allegations in paragraph 15.

14. Except as admitted previously in this answer, Defendant denies the allegations contained in paragraphs 16, 17, and 18 and denies that Plaintiff is entitled to any of the relief sought in the Prayer (on page 5) of the Complaint.

## II.

### DEFENSES

15. Defendant contends, based upon information and belief, that Plaintiff's claim(s) may be barred, in whole or in part, by limitations, waiver, or estoppel.

III.

## COUNTERCLAIM AND THIRD PARTY COMPLAINT

**A.** **Service of Process, Jurisdiction, and Venue for Third Party Complaint.**

16. Third Party Defendant OPEIU is a labor organization, as defined in 29 U.S.C. §152(5), which represents a number of Defendant's employees for the purposes of collectively bargaining wages, hours, and working conditions at Defendant's manufacturing facility located within the Northern District of Texas. OPEIU may be served with process by serving its President at the following address: Ms. Becky Turner, President, Office and Professional Employees International Union Local No. 277, 641 N. Cherry Lane, White Settlement, Texas 76108. Additionally, James L. Hicks, Jr., the attorney for OPEIU, has agreed to accept service on its behalf.

17. Jurisdiction over Third Party Defendant is proper pursuant to 29 U.S.C. §185(c) and 29 U.S.C. §1331.

18. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(1), (2) because OPEIU is doing business in the Northern District of Texas and because the action is based on events which occurred in the Northern District of Texas.

**B.** **Factual Basis of Counterclaim and Third Party Complaint**

19. Lockheed is an aircraft manufacturer at a plant located on a federal reservation in Fort Worth, Texas.

20. Federated Independent Texas Unions Aircraft Local No. 900 ("FITU") is a labor union that represents, for purposes of collective bargaining, a unit of Lockheed employees defined by the National Labor Relations Board in Case No. 16-RC-3976 on August 6, 1965, which unit includes, among other titles, employees referred to as Manufacturing Planners.

21. Over the years, Lockheed and FITU have entered into a series of Collective Bargaining Agreements ("CBAs").

22. The last two CBAs between Lockheed and FITU include the 1998 CBA – which was in effect from June 1, 1998 through June 3, 2001 – and the 2001 CBA which became effective June 4, 2001.

23. In both the 1998 and 2001 CBAs, Section 12 defines the term "grievance" and sets out a process for resolving grievances as defined.

24. OPEIU represents, for purposes of collective bargaining, two units of Lockheed employees as agreed to in the Consent Election Agreement entered into by the parties June 1, 1951 in National Labor Relations Board Case No. 16-RC-731 and the Consent Election Agreement entered into by the parties May 5, 1966, in National Labor Relations Board Case No. 16-RC-4278, which units include, among other titles, employees referred to as Engineering Electrical Planners.

25. Over the years, Lockheed and OPEIU have entered into a series of CBAs.

26. The last two CBAs between Lockheed and OPEIU include the 1997 CBA – which was in effect from May 5, 1997 until May 7, 2000 – and the 2000 CBA which became effective on May 2000 and remains in force until at least May 11, 2003.

27. The term grievance is defined in Article VII, Section 8 of the 2000 OPEIU CBA and a process for resolving grievances is set out in the remainder of that article.

28. The dispute at issue in this case is a general dispute between the Engineering Electrical Planners represented by OPEIU and the Manufacturing Planners represented by FITU.

29. On July 30, 1998, Arbitrator Don Hays rendered an arbitration award requiring that all work involving electrical QAR's (quality assurance reports) be assigned to OPEIU

Engineering Electrical Planners in accordance with a company memorandum issued earlier in 1998 and authored by C.D. Bartek ("the Bartek memo").

30. On August 2, 2000, Arbitrator Don Hays rendered an arbitration award finding Lockheed in violation of the OPEIU CBA and enjoining Lockheed from assigning parts of the tool planning task on F-16 electrical harness boards to FITU employees.

31. At the time the grievances which ultimately led to the OPEIU arbitration awards were filed, there were no work jurisdiction grievances involving work related to electrical harness assembly that had been assigned to OPEIU employees which were being contemporaneously pursued into arbitration by FITU.

32. On February 12, 2001, Edward Knutson, who was at the time President of FITU, filed Grievance No. 5697 accusing Lockheed of assigning work to OPEIU employees that he felt should be assigned to FITU employees.

33. Grievance No. 5697 is the grievance which Plaintiff in this action requests to be referred to bilateral arbitration.

34. OPEIU has laid claim to the same work that is subject of Grievance No. 5697.

35. The earlier arbitration awards in favor of OPEIU "dealt with the very issue" that is the subject of Grievance No. 5697.

36. If the relief requested in Grievance No. 5697 is granted, it would reclaim for FITU the work that is claimed by OPEIU as evidenced by the earlier arbitration awards and the pending OPEIU grievance filed February 18, 2002 on behalf of employee Carol Erker, a true and correct copy of which is attached as Exhibit "A."

37. Grievance No. 5697 is the first grievance in which an FITU employee has challenged the assignment of work since Lockheed sent out the Bartek memo regarding how the work at issue was to be assigned.

38. Grievance No. 5697 marks the first time since the 1998 OPEIU arbitration award that FITU has pursued a work jurisdiction dispute involving work related to electrical harness assembly that had been assigned to OPEIU employees to Stage IV of the grievance process.

39. No FITU grievance of any work jurisdiction dispute has ever actually been arbitrated.

40. There is no language in either the 1998 or 2001 CBAs between FITU and Lockheed stating that work jurisdiction disputes are subject to the grievance and arbitration procedures set out in those CBAs.

41. There is no language in either the 1998 or 2001 CBAs between FITU and Lockheed that would preclude tripartite arbitration.

42. There have been instances where Lockheed has engaged in tripartite arbitrations, although none of the tripartite arbitrations have involved FITU.

43. Lockheed, FITU, and OPEIU have agreed in the past to jointly discuss competing claims for the same work, which discussions have resulted in the work jurisdiction issues being resolved short of arbitration.

44. OPEIU is a necessary party because its rights and interests will be affected by the Court's decision regarding Plaintiff's claims for relief and without involvement from OPEIU, Lockheed could potentially be subjected to conflicting arbitration awards from rival unions.

C.   **Legal Basis for Counterclaim and Third Party Complaint.**

45. In cases under §301 of the LMRA, federal courts have authority to fashion a body of federal common law.

46.  A number of courts have used their authority under §301 of the LMRA to compel tripartite arbitration in situations such as that presented by the present case, even though the collective bargaining agreements at issue did not explicitly authorize tripartite arbitration.

47.  Accordingly, pursuant to §301 of the LMRA Lockheed affirmatively counterclaims against FITU and asserts a third-party claim against OPEIU requesting that this court exercise its authority under §301 of the LMRA to order tripartite arbitration between Lockheed, FITU, and OPEIU with regard to Grievance No. 5697.

## IV.

### REQUEST FOR ATTORNEYS' FEES

48.  Pursuant to 29 U.S.C. §185, Defendant seeks an award of reasonable attorney's fees and costs.

WHEREFORE, Defendant prays that Plaintiff's Complaint be dismissed at Plaintiff's cost, that the court order Grievance No. 5697 to be submitted to tripartite arbitration between FITU, OPEIU and Lockheed, and that it be awarded reasonable attorney's fees and any additional relief to which it may be justly entitled.

Respectfully submitted,

*Kent Smith*

Gary L. Ingram
State Bar No. 10397500
Kent R. Smith
State Bar No. 18635430
JACKSON WALKER L.L.P.
301 Commerce Street, Suite 2400
Fort Worth, TX 76102
(817) 334-7245
Telecopier - (817) 334-7290

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing was mailed to Plaintiff's attorney on this 18th day of March, 2003, by certified mail, return receipt requested, as follows:

Rod Tanner
Wade A. Forsman
Rod Tanner and Associates, P.C.
6000 Western Place, Suite 100
Fort Worth, TX  76107

_____
Kent R. Smith